UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:19-cr-00036-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| SHAWN WHITT, | ) | **OPINION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

In any criminal case, "[t]he district court's responsibility at sentencing is 'to "impose a sentence sufficient, but not greater than necessary, to comply with the purpose set forth' in the § 3553(a)(2) factors." *United States v. Penson*, 526 F.3d 331, 336 (6th Cir. 2008) (citing *United States v. Buchanan*, 449 F.3d 751, 734 (6th Cir. 2006)). Sentencing courts and the United States Sentencing Commission have this in common. In creating the Commission, Congress included as one of its purposes "establish[ing] sentencing policies and practices for the Federal criminal justice system that assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2) of title 18, United States Code[.]" 28 U.S.C. § 991(b)(1)(A). Whereas the Commission "has the capacity courts lack to 'base its determinations on empirical data and national experience,'" a sentencing judge enjoys "greater familiarity with . . . the individual case and the individual defendant before him than the Commission[.]" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007)(internal citations omitted). Thus, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives,

the one, at retail, the other at wholesale." *Rita v. United States*, 551 U.S. 338, 348 (2007).

Although the sentencing court's primary concern is to impose a sentence that advances the overarching goals outlined in § 3553(a), it must begin with the Guidelines. *United States v. Booker*, 543 U.S. 220, 264 (2005) ("[D]istrict courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."). Proper Guideline calculation is so important "that a calculation error will usually require resentencing." *United States v. Rodriguez*, 630 F.3d 39, 41 (1st Cir. 2010); *see also United States v. Penaloza*, 648 Fed. App'x 508, 512 (6th Cir. 2016). But post-*Booker*, the Guidelines are a jumping-off point. *United States v. Rosales-Miranda*, 755 F.3d 1253 (10th Cir. 2014). In applying the § 3553(a) factors with respect to a particular defendant, a district court may consider whether "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations[.]" *Rita*, 551 U.S. at 351; *Kimbrough v. United States*, 552 U.S. 85, 101–102 (2007).

This was made clear in *United States v. Kimbrough*. 552 U.S. 85 (2007). There, the Supreme Court reversed the Fourth Circuit's holding that a sentence "outside the guidelines range is per se unreasonable when it is based on disagreement with the sentencing disparity for crack and powder cocaine offenses." *Id.* at 93 (quoting *United States v. Kimbrough*, 174 Fed. App'x 798, 799 (4th Cir. 2006)). In so doing, the Court in *Kimbrough* held that a district judge must consider the Guidelines range, but "[t]he judge may determine, however, that, in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." *Id.* at 91 (quoting 18 U.S.C. § 3553(a)). Therefore, "the judge may consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses." *Id.*

At the time *Kimbrough* was decided, the Guidelines recommended a 100:1 ratio for sentencing that treated every gram of crack cocaine as the equivalent of 100 grams of powder

cocaine. This ratio was adopted by the Commission from Congress's Anti-Drug Abuse Act of 1986 (1986 Act). *Id.* at 97. The Supreme Court based its holding in part on the fact that "[The crack cocaine] Guidelines do not exemplify the Commission's exercise of its characteristic institutional role." *Id.* at 109. That is because "[i]n formulating Guidelines ranges for crack cocaine offenses . . . the Commission looked to the mandatory minimum sentences set in the 1986 Act, and did not take account of 'empirical data and national experience.'" *Id.*

Mr. Whitt came before the Court for sentencing on March 4, 2020. [R. 26.] He pleaded guilty to Count One of the Indictment, Conspiracy to Distribute 100 Kilograms or More of Marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. [R. 25.] In his plea agreement, Mr. Whitt admitted to possessing with the intent to distribute 400 kilograms of marijuana and 13,000 vape "pens" containing .5 grams of tetrahydrocannabinol, or THC, each. Section 2D1.1 of the United States Sentencing Guidelines provides that 1 gram of THC oil is converted to 167 grams of regular marijuana for sentencing purposes. Applying that conversion rate, Mr. Whitt's relevant conduct would include the 400 kilograms of regular marijuana and 13,000 pens which, when converted, are equivalent to 1,085.5 kilograms of marijuana.

Although they are not co-defendants, Mr. Whitt's case is related to that of Defendant Chasse Clark. *United States v. Clark*, 19-12-GFVT. The day of his sentencing, counsel for Mr. Clark argued against the application of such a steep conversion ratio with respect to the THC pens. "Respectfully," says the sentencing memorandum, "there does not appear to be any rational basis whatsoever for this 1:167 conversion ratio." [19-12-GFVT, R. 38 at 5.] The undersigned's own legal research as well as that undertaken by other district court judges indicate Mr. Clark is right: there is no empirical basis for the conversion ratio provided in the guidelines. *See United States v. Hossain*, 2016 U.S. Dist. LEXIS 558, *15 (S.D. Fl. January 5,

2016) ("After my own research and a phone call to the Sentencing Commission, I still could find no basis for this ratio. It appears to have been included in the first set of Guidelines in 1987, with no published explanation."). Mr. Clark argued the seemingly arbitrary nature of the 1:167 conversion ratio, coupled with the fact that "[marijuana] is a substance which a number of states have either completely legalized or decriminalized, with the trend being towards more states legalizing or decriminalize marijuana," warranted a variance downward on his sentence. [*See* R. 38.] The Court considered the arguments presented by Mr. Clark at Mr. Whitt's sentencing. Although Mr. Whitt's guideline range was 63 to 78 months imprisonment, the undersigned sentenced him to just 48 months.

Whether marijuana should or should not be legalized or decriminalized is irrelevant. Distribution of marijuana is a federal crime and Mr. Whitt's conduct is criminal. However, the argument made by Mr. Clark regarding the conversion ratio is not an unfamiliar one. It calls to mind the Supreme Court's reasoning in *Kimbrough* which, by logical extension, applies here as well. As with crack and powder cocaine, THC oil and regular marijuana are "two forms of the same drug." *Kimbrough*, 552 U.S. at 95. The active ingredient—THC—is the same. But like crack and powder cocaine, there are differences. The THC oil, like that present in the "pens" Mr. Clark was trafficking, is a "highly concentrated form of marijuana," and "the effects upon the user may be more psychologically and physically intense than plant marijuana use." U.S. Drug Enf't Admin., *The Facts About Marijuana Concentrates*, https://www.justthinktwice.gov/facts-about-marijuana-concentrates. According to the DEA, marijuana concentrates "contain extraordinarily high THC levels ranging from 40 to 80 percent THC amounts." *Id.* This is up to four times stronger than "high grade or top shelf marijuana, which normally measures around 20 percent THC levels." *Id.*

Clearly there is justification for some disparate treatment between marijuana concentrates like those at issue here, and regular marijuana. To be clear, the Court does not suggest a new or different ratio for calculation of the Guidelines. But in light of the Supreme Court's holding in *Kimbrough*, coupled with the lack of any discernible empirical or experiential basis for the 1:167 ratio, and considering the nature and circumstances of the offense and Mr. Clark's history and characteristics, the Court finds that the properly calculated Guidelines range in this case is greater than necessary to comply with the purposes of § 3553(a)(2).

This the 27th day of April, 2020.

Gregory F. Van Tatenhove
United States District Judge